```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3     UNITED STATES OF AMERICA,

 4              Plaintiff,

 5       v                              No. 19-CR-20026-2

 6

 7     SURESH REDDY KANDALA,

                Defendant.
 8     _____/

 9
                              PLEA HEARING
10
                 BEFORE THE HONORABLE GERSHWIN A. DRAIN
11                  UNITED STATES DISTRICT JUDGE
                  Theodore Levin United States Courthouse
12                   231 West Lafayette Boulevard
                          Detroit, Michigan
13                     Wednesday, May 8, 2019

14     APPEARANCES:

15
       For the Plaintiff:       MR. RONALD WATERSTREET
16                              MR. TIMOTHY MCDONALD
                                United States Attorney's Office
17                              211 West Fort Street, Suite 2001
                                Detroit, Michigan  48226
18                              (313) 226-9100
                                (313) 226-0221
19
       For the Defendant:       MR. EDWAR ZEINEH
20                              Law Office of Edwar A. Zeineh, PLLC
                                2800 East Grand River Ave., Suite B
21                              Lansing, Michigan  48912
                                (517) 292-7000
22

23     Reported by:            Merilyn J. Jones, RPR, CSR
                               Official Federal Court Reporter
24                             merilyn_jones@mied.uscourts.gov

25
```

TABLE OF CONTENTS

**WITNESSES:   PLAINTIFF**                                          **PAGE**
None

**WITNESSES:   DEFENDANT**
None

**OTHER MATERIAL IN TRANSCRIPT:**
Proceedings                                                         3

**EXHIBITS:**                        Identified              Received
None

```
 1                  Detroit, Michigan
 2                  Wednesday, May 8, 2019 - 11:04 a.m.
 3                  THE CASE MANAGER:  All rise.  The United States
 4     District Court for the Eastern District of Michigan is now in
 5     session.  The Honorable Gershwin A. Drain presiding.
 6                  You may be seated.
 7                  The court calls the criminal matter United States
 8     of America versus Suresh Reddy Kandala.  Case Number
 9     19-cr-20026-2.
10                  Counsel, please state your appearances for the
11     record.
12                  MR. MCDONALD:  Good morning, your Honor.  Tim
13     McDonald and Ron Waterstreet on behalf of the United States.
14                  Also seated at the table is Homeland Security
15     Investigation Special Agent Steve Weber.
16                  THE COURT:  All right.  Good morning.
17                  MR. ZEINEH:  Good morning, your Honor.  Attorney
18     Edwar Zeineh on behalf of the defendant, Suresh Kandala, who is
19     seated to my left.
20                  THE COURT:  All right.  Good morning.
21                  THE DEFENDANT:  Good morning.
22                  THE COURT:  As I understand it, the defendant will
23     be tendering a plea of guilty to the charge in the indictment;
24     is that correct?
25                  MR. ZEINEH:  That's an accurate statement, your
```

```
 1   Honor.
 2               THE COURT:  All right.  Then, you want to approach
 3   the podium, you and your client.
 4               And, again, this is another case without a Rule 11
 5   Plea Agreement; is that correct?
 6               MR. ZEINEH:  That's accurate, your Honor.
 7               MR. MCDONALD:  That is accurate, your Honor.
 8   Although, we did offer the defendant a Rule 11.  He's rejected
 9   that and indicated he wanted to plead without a Rule 11
10   Agreement.
11               THE COURT:  Okay.
12               MR. ZEINEH:  We can acknowledge that for the
13   record, your Honor.  We did discuss that proposed Rule 11.  Did
14   provide that to him.  We explained that, the parameters to him
15   for which he rejected.
16               THE COURT:  Okay.
17               All right.  And so, I take it that your client
18   doesn't have any problem with the English language?
19               MR. ZEINEH:  That is correct, your Honor.
20               THE COURT:  Okay.
21               All right.  So, is it, "Kandala"?
22               THE DEFENDANT:  Yes, sir.
23               THE COURT:  Okay.  Am I saying your name right?
24               THE DEFENDANT:  Yes, sir.
25               THE COURT:  Okay.  "Kandala".  Okay.
```

```
 1                    All right.  Then, is it correct that you want to
 2       plead guilty to the charge in the indictment?
 3                    THE DEFENDANT:  Yes, sir.
 4                    THE COURT:  Okay.  All right.  I'm going to have
 5       my case manager give you an oath.
 6                    THE CASE MANAGER:  Raise your right hand.  Do you
 7       solemnly swear or affirm that the testimony you are about to
 8       give to the Court in this matter here pending shall be the
 9       truth, the whole truth, and nothing but the truth?
10                    THE DEFENDANT:  Yes.
11                    THE CASE MANAGER:  Please lower your hand.
12                    Please state your full name for the record.
13                    THE DEFENDANT:  Suresh Reddy Kandala.
14                    THE COURT:  Okay.  All right.  Mr. Kandala, I'm
15       going to ask you a lot of questions.  I'm required to do so
16       under the court rules, and I know that your attorney has gone
17       over all these matters with you, but, like I said, I'm required
18       to cover them again here in court on the record.
19                    So, do you understand that you are now under oath
20       and if you answer any of my questions falsely, your answers may
21       later be used against you in a separate charge for perjury or
22       false statement; do you understand that?
23                    THE DEFENDANT:  Yes, sir.
24                    THE COURT:  And could you state your full name
25       again for the record?
```

```
 1                THE DEFENDANT:  Suresh Reddy Kandala.

 2                THE COURT:  And how old are you?

 3                THE DEFENDANT:  Thirty-one.

 4                THE COURT:  And how far did you go in school?

 5           What kind of degree do you have?

 6                THE DEFENDANT:  Master's Degree.

 7                THE COURT:  You have a Master's Degree?

 8                THE DEFENDANT:  Yes.

 9                THE COURT:  Where did you get the degree from?

10                THE DEFENDANT:  First one is Northwestern --

11                THE COURT REPORTER:  I'm sorry.

12                THE DEFENDANT:  Northwestern Polytechnic

13      University.

14                MR. ZEINEH:  The first one was Northwestern --

15                THE COURT:  Okay.

16                MR. ZEINEH:  Polytechnic --

17                THE DEFENDANT:  University.

18                MR. ZEINEH:  -- University.

19                THE COURT:  Okay.  All right.  So, you can read

20      and write and understand everything that's being said so far

21      here in court?

22                THE DEFENDANT:  Yes, sir, your Honor.

23                THE COURT:  And if you ever have a problem with

24      any of the questions that I'm asking you, feel free to stop me

25      and talk to your attorney about it, you understand that?
```

```
 1                    THE DEFENDANT:  Yes, sir.

 2                    THE COURT:  All right.  And so have you been

 3     treated recently for any type of mental illness or addiction to

 4     narcotics or alcohol?

 5                    THE DEFENDANT:  No, your Honor.

 6                    THE COURT:  And are you currently under the

 7     influence of any drugs, medication, or alcoholic beverage?

 8                    THE DEFENDANT:  No, your Honor.

 9                    THE COURT:  And have you received a copy of the

10     indictment that was returned against you?

11                    THE DEFENDANT:  Yes, your Honor.

12                    THE COURT:  And have you had your attorney answer

13     any questions that you have related to the charge?

14                    THE DEFENDANT:  Yes.

15                    THE COURT:  Okay.  And he's been able to answer

16     those questions for you?

17                    THE DEFENDANT:  Yes, your Honor.

18                    THE COURT:  Okay.  And are you satisfied with the

19     advice and counsel you've received from him up to this point?

20                    THE DEFENDANT:  Yes, your Honor.

21                    THE COURT:  And so, do you understand that the

22     normal maximum sentence for this offense is a sentence of up to

23     five years in prison and a minimum sentence is a period of

24     probation, you understand that?

25                    THE DEFENDANT:  Yes, your Honor.
```

1          THE COURT:  And the fine that I could impose is

2    anywhere from zero up to $250,000; do you understand that?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  And also do you understand that I am

5    required to impose a special assessment in your case of $100,

6    you understand that?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Additionally, with regard to the case,

9    there's a period of supervised release that I could impose and

10   that could be up to three years; do you understand that?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  And so, do you feel like you

13   understand the consequences of pleading guilty here so far?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Okay.  And has anyone forced you to

16   plead guilty?

17         THE DEFENDANT:  No, your Honor.

18         THE COURT:  Has anyone threatened you and told you

19   that you must plead guilty?

20         THE DEFENDANT:  No.

21         THE COURT:  And are you doing this freely and

22   voluntarily?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:   And are you pleading guilty because

25   you are guilty?

1            THE DEFENDANT:  Yes, your Honor.

2            THE COURT:  And so, you are not a citizen of the

3    United States; is that correct?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  And what country are you a citizen of?

6            THE DEFENDANT:  India.

7            THE COURT:  And do you understand that as a result

8    of this guilty plea and you being convicted of a felony that

9    you will more than likely be deported; do you understand that?

10           THE DEFENDANT:  Yes, your Honor.

11           THE COURT:  And I have no control over that,

12   whether you're deported or not deported, you understand that?

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  And so, do you also understand that

15   there are some additional consequences from pleading guilty to

16   a felony; such as, not being able to possess a firearm, not

17   being able to hold certain positions or offices, not being able

18   to get certain licenses, or things like that.  You understand

19   that having a criminal conviction has those consequences?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  Okay.  And do you also understand that

22   not only will this affect your deportation, but also you will

23   have, you may not ever be able to come back into the United

24   States; do you understand that?

25           THE DEFENDANT:  Yes, your Honor.

```
1                THE COURT:  And so, are you presently on probation

2       or parole on any cases or do you have anything else pending

3       right now?

4                THE DEFENDANT:  No, your Honor.

5                THE COURT:  Okay.  And so, I don't really know

6       what I'm going to do at the time of sentencing on your case,

7       but one of the things I will be looking at are the sentencing

8       guidelines.

9                And have they been computed in this case involving

10      Mr. Kandala?

11               MR. MCDONALD:  Yes, your Honor.  We've

12      preliminarily calculated them at 33 to 41 months.

13               THE COURT:  Okay.

14               MR. ZEINEH:  Your Honor, I expect that we are

15      going to dispute that calculation.  Our calculation is

16      preliminary as well between 12 to 18 or 15 to 21.

17               THE COURT:  Okay.  Okay.

18               So, Mr. Kandala, I don't -- I'm not sure what the

19      guidelines are, but the government, Mr. McDonald believes they

20      are a certain number of months; your lawyer thinks it's a

21      different number, and at the time of sentencing I'm going to

22      decide who's right, so to speak, with regard to the guidelines,

23      you understand that?

24               THE DEFENDANT:  Yes, sir.

25               THE COURT:  Okay.  And in addition to the
```

```
 1    sentencing guidelines I'm going to have a presentence report.
 2    That is a report that's going to be prepared that goes into
 3    your background and history, your schooling, your military
 4    history, if you have that.  It will be a thorough report on
 5    your background and your history; do you understand that?
 6                   THE DEFENDANT:  Yes, your Honor.
 7                   THE COURT:  And so, there's also some laws that I
 8    have to look at in terms of sentencing that kind of guide my
 9    decision in the case; do you understand that?
10                   THE DEFENDANT:  Yes, your Honor.
11                   THE COURT:  And I know your attorney has talked
12    with you about your constitutional rights in this case, but I'm
13    required to go over them again with you here in court.
14                   So you had previously entered a not guilty plea or
15    one has been entered for you; do you understand that?
16                   THE DEFENDANT:  Yes, sir.
17                   THE COURT:  And you don't have to change your plea
18    and plead guilty, you understand that?
19                   THE DEFENDANT:  Yes, sir.
20                   THE COURT:  And you could have a trial on the case
21    and your trial could be either by jury or you could have a
22    trial by judge, if the government and I agreed to it, you
23    understand that?
24                   THE DEFENDANT:  Yes, your Honor.
25                   THE COURT:  And then at a trial you'd have the
```

1   right to be presumed innocent and the government would have to

2   prove you guilty beyond a reasonable doubt; do you understand

3   that?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  And then also at a trial the

6   government would have to bring in witnesses to testify against

7   you and your attorney could question and cross-examine those

8   witnesses, you understand that?

9              THE DEFENDANT:  Yes, your Honor.

10              THE COURT:  And then, your attorney actually could

11   do all of the things that lawyers normally do during trials; do

12   you also understand that?

13              THE DEFENDANT:  Yes, your Honor.

14              THE COURT:  All right.  And at a trial you could

15   testify if you wanted to and tell your side of the story, or

16   you could not testify, and if you decided not to testify, it

17   couldn't be used against you in any way; do you understand

18   that?

19              THE DEFENDANT:  Yes, sir.

20              THE COURT:  Additionally, if you wanted to call

21   witnesses and present a defense or have witnesses testify for

22   you, I would help you bring in witnesses with subpoenas; do you

23   understand that?

24              THE DEFENDANT:  Yes, your Honor.

25              THE COURT:   And so is it pretty clear to you, Mr.

1    Kandala, that by entering this plea of guilty you will stand

2    convicted of this charge and there will be no trial on your

3    case; do you understand is that?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  All right, then, the indictment

6    charges you with conspiracy to commit visa fraud and to harbor

7    aliens for profit, that's the charge.

8              And it looks like the activity went from February

9    of '17 through January of '19, and it had something to do with

10   you helping people to remain in the country or come into the

11   country under the guise of being students at the University of

12   Farmington.

13             And I think what I'm going to do is have Mr.

14   McDonald or your attorney ask the questions to establish the

15   factual basis.

16             MR. MCDONALD:  Thank you, your Honor.  I think Mr.

17   Zeineh is going to offer some questions to establish the

18   factual basis.

19             THE COURT:  Okay.  All right, Mr. Zeineh.

20             MR. ZEINEH:  Thank you, your Honor, for the

21   opportunity.

22             Some of these questions may seem redundant, but

23   we're going to ask them, okay?

24             THE DEFENDANT:  Okay.

25             MR. ZEINEH:  Again, you're not a citizen of the

```
 1   United States, correct?

 2              THE DEFENDANT:  Yes, sir.

 3              MR. ZEINEH:  You're a citizen of India?

 4              THE DEFENDANT:  Yes, sir.

 5              MR. ZEINEH:  Now you came to the United States in

 6   2014, correct?

 7              THE DEFENDANT:  Yes, sir.

 8              MR. ZEINEH:  And you came to the United States of

 9   America on what's called a F-1 student visa?

10              THE DEFENDANT:  Yes, sir.

11              MR. ZEINEH:  In obtaining the F-1 student visa

12   your arrival to the United States was for the purpose to attend

13   a university, correct?

14              THE DEFENDANT:  Yes, sir.

15              MR. ZEINEH:  You initially came to Gannon

16   University?

17              THE DEFENDANT:  Yes, sir.

18              MR. ZEINEH:  That would be Philadelphia, correct?

19              THE DEFENDANT:  Yes, sir.

20              MR. ZEINEH:  But it was too cold in Philadelphia

21   so you transferred to California?

22              THE DEFENDANT:  Yes, sir.

23              MR. ZEINEH:  All right.  Were you transferred to a

24   university called Northwestern Polytechnic University?

25              THE DEFENDANT:  Yes, sir.
```

```
 1                    MR. ZEINEH:  That's in California, again?

 2                    THE DEFENDANT:  Yes, sir.

 3                    MR. ZEINEH:  And at that time you knew that a

 4    foreign student, as a foreign student your status was only

 5    valid if you are enrolled as a full-time student?

 6                    THE DEFENDANT:  Yes, sir.

 7                    MR. ZEINEH:  And in that enrollment you were

 8    making progress toward completion of a full course of study?

 9                    THE DEFENDANT:  Yes, sir.

10                    MR. ZEINEH:  You're familiar with what's called a

11    I-20, correct?

12                    THE DEFENDANT:  Yes, sir.

13                    MR. ZEINEH:  You agree and you knew and know that

14    an I-20 allows you to apply for that F-1 student visa?

15                    THE DEFENDANT:  Yes, sir.

16                    MR. ZEINEH:  That's your proof that you have a

17    legal academic status, correct?

18                    THE DEFENDANT:  Yes, sir.

19                    MR. ZEINEH:  It can be used as an entry document

20    if you travel back to India or other places in the world?

21                    THE DEFENDANT:  Yes, sir.

22                    MR. ZEINEH:  That means you can come back to the

23    United States with that I-20?

24                    THE DEFENDANT:  Yes.

25                    MR. ZEINEH:  It allows other students, yourself
```

1    and other students to participate in what's called practical

2    training, right?

3                    THE DEFENDANT:  Yes, sir.

4                    MR. ZEINEH:  The document's obtained also when you

5    transfer from school to school, agreed?

6                    THE DEFENDANT:  Yes, sir.

7                    MR. ZEINEH:  That I-20 allows you to stay in the

8    United States as a lawful student?

9                    THE DEFENDANT:  Yes, sir.

10                   MR. ZEINEH:  You at some point had transferred to

11   the University of Farmington, agreed?

12                   THE DEFENDANT:  Yes, sir.

13                   MR. ZEINEH:  And that was around, on or about

14   March of 2017?

15                   THE DEFENDANT:  Yes.

16                   MR. ZEINEH:  And you knew at the time that you

17   transferred to the University of Farmington you weren't

18   attending classes?

19                   THE DEFENDANT:  Yes, sir.

20                   MR. ZEINEH:  All right.

21                   And, in fact, you never attended any classes at

22   the University of Farmington, agreed?

23                   THE DEFENDANT:  Yes, sir.

24                   MR. ZEINEH:  Never took any steps in furtherance

25   of a specific course of study, agreed?

```
 1                    THE DEFENDANT:  Yes, sir.

 2                    MR. ZEINEH:  You knew that that arrangement

 3       between you and the University of Farmington was not something

 4       approved by the Department of Homeland Security?

 5                    THE DEFENDANT:  Yes, sir.

 6                    MR. ZEINEH:  You knew, in fact, that was illegal,

 7       right?

 8                    THE DEFENDANT:  Yes, sir.

 9                    MR. ZEINEH:  In violation of the rules?

10                    THE DEFENDANT:  Yes, sir.

11                    MR. ZEINEH:  And you transferred to the University

12       of Farmington solely for maintaining the F-1 status?

13                    THE DEFENDANT:  Yes, sir.

14                    MR. ZEINEH:  Now, you know an individual by the

15       name of Santosh Sama, correct?

16                    THE DEFENDANT:  Yes, sir.

17                    MR. ZEINEH:  Now Santosh is another named

18       defendant on your indictment?

19                    THE DEFENDANT:  Yes, sir.

20                    MR. ZEINEH:  You enrolled in the University of

21       Farmington again to keep that I-20?

22                    THE DEFENDANT:  Yes, sir.

23                    MR. ZEINEH:  You wanted to keep your status?

24                    THE DEFENDANT:  Yes, sir.

25                    MR. ZEINEH:  Santosh referred you to the
```

```
 1    University of Farmington?

 2                THE DEFENDANT:  Yes, sir.

 3                MR. ZEINEH:  And you knew that Sama Santosh, or

 4    Santosh Sama was referring other individuals to the University

 5    of Farmington, correct?

 6                THE DEFENDANT:  Yes, sir.

 7                MR. ZEINEH:  And those other individuals were also

 8    illegally obtaining I-20's, correct?

 9                THE DEFENDANT:  Yes, sir.

10                MR. ZEINEH:  And those individuals that Sama in

11    fact referred to the University of Farmington, in fact, did get

12    the I-20's?

13                THE DEFENDANT:  I'm not sure what, but maybe get,

14    they would get the I-20's.

15                THE COURT:  Okay.  Speak a little louder so I can

16    hear you.  I could barely hear your response.

17                MR. ZEINEH:  I am going to rephrase that question,

18    your Honor.

19                THE COURT:  Okay.

20                MR. ZEINEH:  The referral to the students to the

21    University of Farmington, those were students who were in a

22    similar situation as you, correct?

23                THE DEFENDANT:  Yes, sir.

24                MR. ZEINEH:  They were foreign students?

25                THE DEFENDANT:  Yes, sir.
```

```
 1                 MR. ZEINEH:  For whatever reason, or occurrence,
 2     needed to attend a university, correct?
 3                 THE DEFENDANT:  Yes, sir.
 4                 MR. ZEINEH:  And they were referred to the
 5     University of Farmington?
 6                 THE DEFENDANT:  Yes, sir.
 7                 MR. ZEINEH:  All right.  They were referred to the
 8     University of Farmington for enrollment?
 9                 THE DEFENDANT:  Yes, sir.
10                 MR. ZEINEH:  And as part of that enrollment, they
11     would get their I-20's?
12                 THE DEFENDANT:  Yes, sir.
13                 MR. ZEINEH:  That's what you knew?
14                 THE DEFENDANT:  Yes, sir.
15                 MR. ZEINEH:  And as a result of getting their
16     I-20's, they could stay in the United States?
17                 THE DEFENDANT:  Yes, sir.
18                 MR. ZEINEH:  And they could stay in the United
19     States undetected by the government, correct?
20                 THE DEFENDANT:  Yes, sir.
21                 MR. ZEINEH:  Illegally stay in the United States,
22     you would agree?
23                 THE DEFENDANT:  Yes, sir.
24                 MR. ZEINEH:  And in furtherance of that objective,
25     you agree that on or about January of 22nd, 2018 you and
```

1    Defendant Number 5, Santosh Sama, met with undercover agents at

2    the University of Farmington?

3                    THE DEFENDANT:  Yes, sir.

4                    MR. ZEINEH:  And the purpose of that meeting was

5    for receiving payment, or referral fees, essentially?

6                    THE DEFENDANT:  Yes, sir.

7                    MR. ZEINEH:  All right.  And it was an amount of

8    $20,000 that you received that day?

9                    THE DEFENDANT:  Yes, sir.

10                   MR. ZEINEH:  All right.  And you helped count that

11   money or you watched the money being counted?

12                   THE DEFENDANT:  Yes, sir.

13                   MR. ZEINEH:  And you would agree you took that

14   money, that $20,000, and placed it in your pocket, correct?

15                   THE DEFENDANT: Yes, sir.

16                   MR. ZEINEH:  And you again know that $20,000

17   represented the payment for the illegal referrals to the

18   University of Farmington?

19                   THE DEFENDANT:  Yes, sir.

20                   MR. ZEINEH:  Okay.  Also, during the course of

21   that meeting, and in furtherance of these objectives, you

22   participated in a discussion with the undercover agent at the

23   University of Farmington and Santosh Sama about referring

24   students for services?

25                   THE DEFENDANT:  Yes, sir.

```
 1                    MR. ZEINEH:  And at that time there was a notebook
 2      that was passed between Santosh Sama and the undercover agent?
 3                    THE DEFENDANT:  Yes, sir.
 4                    MR. ZEINEH:  And in that notebook there contained
 5      a list of names, agreed?
 6                    THE DEFENDANT:  Yes.
 7                    MR. ZEINEH:  A lot of names, but you don't know
 8      exactly how many?
 9                    THE DEFENDANT:  Yes, sir.
10                    MR. ZEINEH:  And, again, in furtherance of those
11      initial objectives that we've stated, you again telephoned the
12      University of Farmington on February 20th of the 2018, correct?
13                    THE DEFENDANT:  Yes, sir.
14                    MR. ZEINEH:  And that was at the direction of Mr.
15      Sama?
16                    THE DEFENDANT:  Yes, sir.
17                    MR. ZEINEH:  And, in fact, Mr. Sama was in India
18      at the time?
19                    THE DEFENDANT:  Yes, sir.
20                    MR. ZEINEH:  And he -- you knew he sent an e-mail
21      to the University of Farmington?
22                    THE DEFENDANT:  Yes, sir.
23                    MR. ZEINEH:  And that e-mail was related to the
24      enrollment of other students at the University of Farmington?
25                    THE DEFENDANT:  Yes, sir.
```

```
 1                    MR. ZEINEH:  Again, to illegally enroll with the

 2      I-20?

 3                    THE DEFENDANT:  Yes, sir.

 4                    MR. ZEINEH:  And as a result of him being in

 5      India, and followup being needed on the e-mail, you made that

 6      call to the University of Farmington?

 7                    THE DEFENDANT:  Yes, sir.

 8                    MR. ZEINEH:  You spoke with an undercover agent at

 9      that time?

10                    THE DEFENDANT:  Yes, sir.

11                    MR. ZEINEH:  And the purpose of that call was to

12      check on the status of those names that he had e-mailed over to

13      the University of Farmington?

14                    THE DEFENDANT:  Yes, sir.

15                    MR. ZEINEH:   And in doing so you knew those names

16      represented other students that wanted to get the fraudulent

17      I-20's.

18                    THE DEFENDANT:  Yes, sir.

19                    MR. ZEINEH:  All right.  And you asked about

20      getting -- you had the conversation about enrolling those

21      students?

22                    THE DEFENDANT:  Yes, sir.

23                    MR. ZEINEH:  And in response that undercover agent

24      said you had to pick 50?

25                    THE DEFENDANT:  Yes, sir.
```

```
1                    MR. ZEINEH:  Okay.

2                    And the students, to the extend you have

3    knowledge, those students that were on that list did, in fact,

4    get the I-20's?

5                    THE DEFENDANT:  Yes, sir.

6                    MR. ZEINEH:  All right.

7                    And as a result of receiving those I-20's, again,

8    they got to stay in the United States undetected?

9                    THE DEFENDANT:  Yes, sir.

10                   MR. ZEINEH:  And during the course of that initial

11   conversation on January, one of the conversations on January

12   22, 2018 you became aware that others were, in fact, referring

13   students to the University of Farmington?

14                   THE DEFENDANT:  Yes, sir.

15                   MR. ZEINEH:  You didn't know them, but you heard

16   that discussion?

17                   THE DEFENDANT:  Yes, sir.

18                   MR. ZEINEH:  Okay.  You're aware that this conduct

19   is illegal?

20                   THE DEFENDANT:  Yes, sir.

21                   MR. ZEINEH:  All right.

22                   Now, we're going to get into some specifics.

23   There was an indictment that we provided you, correct?

24                   THE DEFENDANT:  Okay.

25                   MR. ZEINEH:  You would agree -- you acknowledge
```

1    receiving a copy of the indictment?

2              THE DEFENDANT:  Yes, sir.

3              MR. ZEINEH:  And going over that indictment?

4              THE DEFENDANT:  Yes, sir.

5              MR. ZEINEH:  You agree with the count alleged

6    against you in that indictment?

7              THE DEFENDANT:  Yes, sir.

8              MR. ZEINEH:  All right.  Do you agree that -- you

9    agree you committed one or more of the overt acts described in

10   the indictment?

11             THE DEFENDANT:  Yes, sir.

12             MR. ZEINEH:  All right.  Specifically, Count One

13   is conspiracy to commit visa fraud and harbor aliens for

14   profit, agreed?

15             THE DEFENDANT:  Yes, sir.

16             MR. ZEINEH:  And specifically and generally --

17   specifically, excuse me, relating to the counts in the

18   indictment, you voluntarily entered into this conspiracy,

19   agreed?

20             THE DEFENDANT:  Yes, sir.

21             MR. ZEINEH:  And you knowingly enter into the

22   conspiracy?

23             THE DEFENDANT:  Yes, sir.

24             MR. ZEINEH:  You also agreed through your own acts

25   and the acts of Sama that you had knowingly obtained and

1    possessed, or others had knowingly obtained and possessed a

2    fraudulent I-20?

3              THE DEFENDANT:  Yes, sir.

4              MR. ZEINEH:  And you know that aliens were able to

5    remain in the United States in violation of law, correct?

6              THE DEFENDANT:  Yes, sir.

7              MR. ZEINEH:  And then you committed this offense

8    for private financial gain?

9              THE DEFENDANT:  Yes, sir.

10             MR. ZEINEH:  I hopefully covered everything, your

11   Honor.

12             MR. MCDONALD:  I have a couple more questions if I

13   may?

14             THE COURT:  All right.

15             MR. MCDONALD:  When you transferred, Mr. Kandala,

16   to the University of Farmington in March 2017, you did so by

17   receiving an I-20 from that school?

18             THE DEFENDANT:  Yes, sir.

19             MR. MCDONALD:  And you also made a phone call at

20   or around that time in March 2017 that you wanted simply to

21   maintain your status in the United States and not attend

22   classes?

23             THE DEFENDANT:  Yes, sir.

24             MR. MCDONALD:  I want to direct your attention to

25   January 22nd, 2018, that's the date of this meeting you had

```
 1    with Santosh and an undercover officer, that's Santosh Sama?

 2              THE DEFENDANT:  Yes, sir.

 3              MR. MCDONALD:  And you were obviously present on

 4    that day?

 5              THE DEFENDANT:  Yes, sir.

 6              MR. MCDONALD:  And, in fact, you showed up the

 7    following day on the 23rd again to meet with Santosh and the

 8    undercover officer?

 9              THE DEFENDANT:  Yes, sir.

10              MR. MCDONALD:  Now, during this meeting there was,

11    as your attorney said, you participated in a discussion between

12    the undercover agent, Santosh Sama, and, obviously, you about

13    what was going on at the University of Farmington, right?

14              THE DEFENDANT:  Yes, sir.

15              MR. MCDONALD:  And a topic came up at one point as

16    to how much money Santosh Sama had received, remember that?

17              THE DEFENDANT:  Yes, sir.

18              MR. MCDONALD:  All right.

19              And Santosh Sama said that he pays you and others,

20    correct?

21              THE DEFENDANT:  No, sir.  I'm not agree with that.

22              MR. MCDONALD:  The question is Santosh Sama during

23    that meeting said that he pays you and other people?

24              THE DEFENDANT:  Santosh didn't say that to me like

25    that.
```

```
 1                    THE COURT REPORTER:  I'm sorry?
 2                    MR. ZEINEH:  Santosh said --
 3                    THE DEFENDANT:  Santosh didn't say it like that,
 4       sir, at that time.
 5                    MR. MCDONALD:  The answer to my question would be:
 6       No, he didn't say that?
 7                    MR. ZEINEH:  To the best of your recollection is
 8       that, no?
 9                    THE DEFENDANT:  Yes, sir.
10                    MR. MCDONALD:  Do you recall saying on the video
11       that you received money --
12                    THE DEFENDANT:  Yes, sir.
13                    MR. MCDONALD:  -- from Santosh?
14                    THE DEFENDANT:  No.
15                    MR. MCDONALD:  Do you recall saying on the video
16       that you sent money to India?
17                    THE DEFENDANT:  Yes, sir.
18                    MR. MCDONALD:  Okay.
19                    Now, during this discussion about the number of
20       students, you knew that it was more, at least 100 students,
21       correct, that had been referred?
22                    THE DEFENDANT:  I'm not aware of that, sir, at
23       that time.
24                    MR. MCDONALD:  Well, if you watched the video back
25       with you sitting there, would that refresh your memory at some
```

```
 1   point?

 2               THE DEFENDANT:  Maybe, sir.

 3               MR. MCDONALD:  Okay.  So, if that video says

 4   that -- if on that video Santosh says he has recruited at least

 5   100 students, you wouldn't disagree with that?

 6               THE DEFENDANT:  No.

 7               MR. MCDONALD:  Okay.  You know Santosh pretty

 8   well, right?

 9               THE DEFENDANT:  Yes, sir.

10               MR. MCDONALD:  He is your --

11               THE DEFENDANT:  Friend.

12               MR. MCDONALD:  Okay.  Is he also your cousin?

13               THE DEFENDANT:  No.

14               MR. MCDONALD:  Okay.  Are you related in any

15   manner?

16               THE DEFENDANT:  No.  Just a friend.

17               MR. MCDONALD:  If he says you're his

18   cousin/brother, do you know what that means?

19               THE DEFENDANT:  No.  I'm not his cousin/brother,

20   sir.

21               MR. MCDONALD:  Okay.

22               Now, you also, again, you also contacted the

23   university on February 20th, 2018, and the reason you did so

24   was you were doing a favor for Santosh, correct?

25               THE DEFENDANT:  Yes, sir.
```

```
 1                    MR. MCDONALD:  And you were told that the

 2       university could only admit 50 students?

 3                    THE DEFENDANT:  Yes.

 4                    MR. MCDONALD:  That you had to pick the names; you

 5       or Santosh had to pick the names, correct?

 6                    THE DEFENDANT:  Santosh, yes, had to pick the

 7       names, yes, sir.

 8                    MR. ZEINEH:  And when you found out it was only 50

 9       students, you expressed some concern that there are many other

10       students that want to join, right?

11                    THE DEFENDANT:  Yes, sir.

12                    MR. MCDONALD:  You knew that all these students

13       had been committing fraud, right?

14                    THE DEFENDANT:  Yes, sir.

15                    MR. MCDONALD:  By staying at the school?

16                    THE DEFENDANT:  Yes, sir.

17                    MR. MCDONALD:  And that if not for the school,

18       they would be, have to go back to their home country, right?

19                    THE DEFENDANT:  Yes, sir.

20                    MR. MCDONALD:  Okay.  May I have one moment?

21                    THE COURT:  All right.

22                    MR. MCDONALD:  One more question, you -- this

23       school -- the University of Farmington, that was in the Eastern

24       District of Michigan -- I think there may be a stipulation from

25       defense counsel that that is the case.
```

```
 1                    MR. ZEINEH:  That is accurate, your Honor.  We'll
 2       stipulate.
 3                    THE COURT:  Okay.  All right, then.
 4                    MR. MCDONALD:  And on at least two occasions
 5       during the conspiracy you went and met with undercover agents
 6       as we discussed, at school, correct?
 7                    THE DEFENDANT:  Yes, sir.
 8                    MR. MCDONALD:  Your Honor, I'm satisfied at this
 9       point with the factual basis.
10                    THE COURT:  Okay.  Mr. Zeineh -- let me just ask a
11       couple questions, too.
12                    Mr. Kandala, when did you come here into the
13       country, to the United States?
14                    THE DEFENDANT:  2014, December 28.
15                    THE COURT:  Okay.  December of 2014?
16                    THE DEFENDANT:  Yes, sir.
17                    THE COURT:   Where did you live when you first got
18       here?
19                    THE DEFENDANT:  First one week I lived in
20       Philadelphia, Erie.
21                    THE COURT:  You have to speak a little slower and
22       try to speak the English a little clearer.
23                    THE DEFENDANT:  Sure, sir.
24                    THE COURT:  Okay.  Where did you first live?
25                    THE DEFENDANT:  Erie, Philadelphia.
```

```
 1                    THE COURT:  In Erie, Philadelphia?
 2                    THE DEFENDANT:  Yes, sir.
 3                    THE COURT:  Okay.  Did you go to school there?
 4                    THE DEFENDANT:  I went one week, sir.
 5                    THE COURT:   Okay.  You went one week and then
 6      what happened?
 7                    THE DEFENDANT:  Like it's the climate is very
 8      cold.  Where I'm living in India it's very hot place, so I
 9      change it to California.
10                    THE COURT:  Okay.  And so how long did you stay in
11      California?
12                    THE DEFENDANT:  More than one year, sir.  One year
13      two months, like three months.
14                    THE COURT:  Okay.  And when you transferred to
15      California, what school were you attending at that point?
16                    THE DEFENDANT:  Northwestern Polytechnic
17      University.
18                    THE COURT: Okay.  And where did you live when you
19      were attending school there?
20                    THE DEFENDANT:  In Fremont, California.
21                    THE COURT:  Okay.  And so when did you meet
22      Santosh Sama?
23                    THE DEFENDANT:  In April 2015 in Fremont,
24      California.
25                    THE COURT:  Okay.  So you met him in California?
```

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And did he help you to come to the

3    Detroit area, to the University of Farmington?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Okay.  And so you were also telling

6    other students about the opportunity to come to University of

7    Farmington and participate in this university that you really

8    didn't go to classes or you didn't really do anything; is that

9    right?

10          THE DEFENDANT:  I didn't talk to any students,

11    sir.

12          THE COURT:  Okay.  You didn't talk to any

13    students?

14          THE DEFENDANT:  No, sir.

15          THE COURT:  Okay.  How did you communicate and

16    help recruit students?

17          THE DEFENDANT:  I didn't recruit anybody, sir.  I

18    just helped Sama because he helped me to join the University.

19    He's my friend, so at that time I communicated with them

20    because he's in India.

21          THE COURT:  Okay.  How long did you know him?

22          THE DEFENDANT:  From February 2015 onwards I know

23    him, sir.

24          THE COURT:  Okay.  Did you all become pretty good

25    friends?

```
 1                    Was he going to school with you, too, at --
 2                    THE DEFENDANT:  Yes.
 3                    THE COURT:  Okay.  All right.  Either side have
 4     any additional questions at all?
 5                    MR. MCDONALD:  I just have a couple questions just
 6     so the record is clear.
 7                    THE COURT:  All right.
 8                    MR. MCDONALD:  Mr. Kandala, you never moved to the
 9     Detroit, Michigan area, correct?
10                    THE DEFENDANT:  No, sir.
11                    MR. MCDONALD:  You lived in California at one
12     point?
13                    THE DEFENDANT:  Yeah.  At one point I lived in
14     California.
15                    MR. MCDONALD:  And at the time you were living in
16     California you were actually roommates with Mr. Santosh Sama;
17     is that right?
18                    THE DEFENDANT:  Yes, sir.
19                    MR. MCDONALD:  And then after leaving California
20     where did you move to?
21                    THE DEFENDANT:  I lived in Texas.  For two months
22     after that I lived in New Jersey, and I went, again, I came
23     back to the California.
24                    THE COURT:  Okay.  You went to, from California
25     you went to Texas?
```

```
 1                    THE DEFENDANT:  Yes, sir.

 2                    THE COURT: And then from Texas you went to New

 3       Jersey?

 4                    THE DEFENDANT:  Yes, sir.

 5                    THE COURT:  Okay.  And then you went back to

 6       California?

 7                    THE DEFENDANT:  Yes, sir.

 8                    THE COURT:  And did you move anywhere else between

 9       being in California and now?

10                    THE DEFENDANT:  Yes, sir.  In Virginia.

11                    THE COURT:  You lived in Virginia, too?

12                    THE DEFENDANT:  Yes, sir.

13                    THE COURT:  Where in Virginia did you live?

14                    THE DEFENDANT:  Near Fairfax, sir.

15                    THE COURT:  Okay.  Did you live anywhere else

16       before you were arrested on this case?

17                    THE DEFENDANT:  Yes, sir.  In, near Michigan also

18       I live one week.

19                    THE COURT:  Okay.  Where in Michigan was it?

20                    THE DEFENDANT:  Detroit, near Detroit.

21                    THE COURT:  Dexter did you say?

22                    THE DEFENDANT:  Detroit.

23                    MR. ZEINEH:  Detroit, your Honor.

24                    THE COURT:  Oh, Detroit.

25                    MR. ZEINEH:  Near Detroit.
```

```
 1                THE COURT:  Okay.  All right.  I don't have

 2   anything else.

 3                Are counsel satisfied with the factual basis at

 4   this point?

 5                MR. ZEINEH:  Yes, your Honor.

 6                MR. MCDONALD:  Yes, your Honor.

 7                THE COURT:  And are counsel also satisfied that

 8   I've complied with Rule 11 in terms of taking the plea?

 9                MR. ZEINEH:  Yes, your Honor.

10                MR. MCDONALD:  Yes, your Honor.

11                THE COURT:  All right.  Then the Court will find

12   that the defendant is fully competent and capable of entering a

13   plea, that he's aware of the nature of the charges and the

14   consequences of the plea and that the plea of guilty is knowing

15   and a voluntary plea supported by an independent factual basis

16   as to each of the essential elements of the offense.

17                And so, I'm therefore going to accept the plea and

18   I'm going to find the defendant guilty of the offense, and I'm

19   going to refer the matter to the probation department for a

20   presentence investigation and report and schedule the

21   sentencing for?

22                THE CASE MANAGER:  September 5th, 2019 at 2:30.

23                THE COURT:  Okay.  All right.  Then, we'll be in

24   recess on the case at this --

25                MR. MCDONALD:  Your Honor, I'm sorry.  I have two
```

1   more very quick matters if I may for the record?

2              THE COURT:   All right.

3              MR. MCDONALD:   As the indictment notes there is a

4   forfeiture provision.   There has not been any bill of

5   particulars filed in this particular case.   There may or may

6   not be in the future, but I just want to make sure the

7   defendant is on notice that any proceeds or money that he's

8   received as a result of his criminal conduct could be subject

9   to forfeiture.   That's the first matter.

10             THE COURT:   Okay.   Let me stop you right there,

11   because I think I've got -- is this a bill of particulars that

12   I have -- no.   Looks like it's for somebody else.

13             Okay.

14             MR. MCDONALD:   Thank you.

15             The second matter, and I referenced this earlier,

16   that we had previously offered the defendant a Rule 11 that had

17   a provision whereby we would agree not to appeal the sentence

18   if the Court sentenced the defendant to at least 21 months.   I

19   just want to make clear that that could be more favorable to

20   him ultimately in the event the Court were to sentence him

21   within the existing guidelines.   We believe they are properly

22   calculated at 33 to 41 months.   I just want to make sure he

23   understands that; he's talked to his lawyer about that, and he

24   still wishes to proceed without the Rule 11.

25             THE COURT:   Okay.

```
 1              MR. ZEINEH:  I've talked to him.  I've explained

 2   it.  I explained the overall nature of the purpose of

 3   sentencing, the nature of sentencing, the effect of the Rule

 4   11, the consequence of not taking it or the consequences of

 5   taking it.  I believe there is additional facts and

 6   circumstances relevant to the, the appropriate sentencing.  I

 7   believe this is consistent with all the defendants in this case

 8   but I'll defer to it.  If I can voir dire for purposes of the

 9   record since it was brought up.

10              THE COURT:  Okay.  Sure.

11              MR. ZEINEH:  Mr. Kandala, you and I have met on

12   several occasions, correct?

13              THE DEFENDANT:  Yes, sir.

14              MR. ZEINEH:  I've come to visit you in jail?

15              THE DEFENDANT:  Yes, sir.

16              MR. ZEINEH:  Now, during the course of those

17   conversations, we reviewed what's called a Rule 11?

18              THE DEFENDANT:  Yes, sir.

19              MR. ZEINEH:  You know what that is, right?

20              THE DEFENDANT:  Yes, sir.

21              MR. ZEINEH:  You know what that is because I

22   explained it to you?

23              THE DEFENDANT:  Yes, sir.

24              MR. ZEINEH:  I explained to you the benefits --

25              THE DEFENDANT:  Yes, sir.
```

```
 1                    MR. ZEINEH:  -- of the Rule 11?

 2                    THE DEFENDANT:  Yes, sir.

 3                    MR. ZEINEH:  And the consequences of the Rule 11?

 4                    THE DEFENDANT:  Yes, sir.

 5                    MR. ZEINEH:  The difference between the taking the

 6     Rule 11 and not taking the Rule 11?

 7                    THE DEFENDANT:  Yes, sir.

 8                    MR. ZEINEH:  You understand the Rule 11?

 9                    THE DEFENDANT:  Yes, sir.

10                    MR. ZEINEH:  You understand one was offered?

11                    THE DEFENDANT:  Yes, sir.

12                    MR. ZEINEH:  And you agree not to accept it?

13                    THE DEFENDANT:  Yes, sir.

14                    MR. ZEINEH:  You got any questions about the Rule

15     11?

16                    THE DEFENDANT:  No, sir.

17                    MR. ZEINEH:  You're comfortable proceeding the way

18     we did?

19                    THE DEFENDANT: Yes, sir.

20                    MR. MCDONALD:  Thank you, your Honor.

21                    THE COURT:  All right.  Yeah, I'm satisfied that

22     he understands the nature of the Rule 11 and has rejected it.

23                    All right.  Anything else on this matter?

24                    MR. ZEINEH:  No.

25                    MR. MCDONALD:  Not from the government.  Thank
```

1    you.

2                    MR. ZEINEH:  Thank you for your time, your Honor.

3                    THE COURT:  We'll be in recess.

4                    THE CASE MANAGER:  All rise.

5                    Court is in recess.

6              (At 11:39 a.m. proceedings concluded)

7

8                    C E R T I F I C A T E

9          I, Merilyn J. Jones, Official Court Reporter of the

10   United States District Court, Eastern District of Michigan,

11   appointed pursuant to the provisions of Title 28, United States

12   Code, Section 753, do hereby certify that the foregoing pages

13   1-39, inclusive, comprise a full, true and correct transcript

14   taken in the matter of the United States of America versus

15   Suresh Reddy Kandala, 19-cr-20026-2 on Wednesday, May 8, 2019.

16

17

18                    /s/Merilyn J. Jones
                      Merilyn J. Jones, CSR, RPR
19                    Federal Official Reporter
                      231 W. Lafayette Boulevard
20                    Detroit, Michigan  48226

21   Date: June 2, 2019

22

23

24

25